UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEAN TRAN<br><br>Defendant | CRIMINAL No. 24-CR-10178-FDS |

## GOVERNMENT'S SENTENCING MEMORANDUM

Now comes the United States and requests a sentence of 18 months in prison; 3 years of supervised release; and a fine of $25,000. Such a sentence is consistent with the sentencing factors enumerated under 18 U.S.C. § 3553(a).

## GUIDELINES CALCULATION

The government agrees with the United States Probation Office's calculation of defendant Dean Tran's offense level as 12. (PSR, ¶ 53). Tran's advisory guideline range is 12-18 months. The base offense level is 14. (PSR, ¶ 45). The offense level is reduced by 2 levels for acceptance of responsibility. (PSR, ¶ 52).

## FACTS

The government agrees with the factual recitation in the PSR. (PSR, ¶¶ 8-35). As described therein, Tran obstructed justice by lying to federal agents about a phony job offer and job offer letter from his sister and co-defendant, Tuyet Martin, at her New Hampshire-based food production company. Before Tran lied to agents about the letter and job offer, he had used the letter/job offer to defraud unemployment authorities and obtain benefits that he was not entitled to receive. In addition, Tran was so intent on making sure he unlawfully received unemployment

benefits that he instructed Martin on at least two occasions to provide misleading information to authorities if she were questioned about the letter and job offer.

In April 2021, Tran's pandemic unemployment benefits were suspended. (PSR, ¶¶ 14-15). Within a few days, Tran contacted his sister to create the sham job offer to get his benefits reinstated. (PSR, ¶ 17). Martin agreed to the scheme and drafted a job offer letter that she emailed to Tran. (PSR, ¶ 17). Tran significantly edited the letter and then finalized it, signing Martin's name to the letter and submitting it to unemployment officials. (PSR, ¶ 20). Tran even instructed his sister on what to say if she were questioned about the letter by unemployment officials, "[a]lso, I'm not sure if they will call you to substantiate, but if they do, say my resume came to you from an acquaintance, interviewed in December and offer made in January. I couldn't accept the offer due to child care issues." (PSR, ¶ 20).

Unemployment department official D.L. then conducted an appeals hearing with Tran under oath. (PSR, ¶ 23). During the hearing, Tran misled D.L. by falsely claiming that he had submitted his resume to an "acquaintance" for the job at the sister's company. (PSR, ¶ 23). There is no evidence Tran submitted any resume to Martin or anyone else at her company. Tran also said he had a "discussion with HR," but Martin's business did not have a Human Resources Department as Martin handled all personnel issues herself. After the hearing, just as he had done in the email to Martin before the hearing, Tran again gave specific instructions by text to his sister about what story to give if she were asked about the letter. (PSR, ¶ 25).

When Tran was confronted about the job offer letter during his interview by federal agents, instead of coming clean about the true nature of the letter and job offer, Tran double downed. He claimed that Martin was the author of the letter (when he had substantially revised

it) and also falsely stated that she had signed the letter, when he had signed her name to the letter. (PSR, ¶¶ 29-30).

### 3553(a) FACTORS

The Court should sentence Tran to a substantial period of incarceration because lying to federal agents and obstructing justice are serious offenses. Just as Tran thought he could get away with lying to unemployment officials to keep getting unemployment benefits (even while he was actually working), Tran thought he could derail the federal investigation into his fraud schemes. The government's sentencing recommendation is justified based on the series of events stemming from Tran's lies to federal agents, including getting his sister and co-defendant involved in his criminal activity and causing agents to seek to verify the accuracy of the job offer letter.

### A. Tran Continues His False Narrative In Letter to Appeals Court

And Tran still has not learned his lesson as is obvious from a letter he recently wrote. See Exhibit A (the "Appeals Letter"). On January 10, 2026, Tran wrote a letter to the United States Court of Appeals for the First Circuit in support of his pending appeal regarding his convictions for unemployment and tax fraud schemes. Tran's letter follows the same false narrative from his trial on the tax and unemployment fraud. Instead of showing any contrition or self-reflection on Tran's part, Tran essentially denies committing unemployment and tax fraud, and instead blames others and baselessly accuses government agents of wrongdoing. It is astounding that even after receiving a sentence of 18 months and spending approximately 10 months in prison, Tran has still not learned his lesson and continues to deny his crimes even in the face of convictions by a jury of his peers and a significant sentence by this Court.

The theme underlying Tran's letter is that everyone was out to get him and all of his legal problems were someone else's fault and not his.  At trial, Tran completely denied responsibility and even perjured himself to avoid accountability.  The Appeals Letter is full of the same vitriol that characterized Tran's response during his first trial.  Tran blames individuals like D.L. and J.M. for his unemployment fraud even though Tran is who orchestrated a fake job offer from his sister to fraudulently earn unemployment benefits.  Tran even goes so far in the Appeals Letter as to claim that D.L. perjured herself at trial.  In fact, Tran, not D.L., is who committed perjury at trial by littering his testimony with false statements.  D.L. flatly rejected Tran's assertion that she gave him the green light to commit fraud in an off-the-record conversation.  Tran received an obstruction of justice enhancement at sentencing and the jury clearly rejected his testimony in convicting him.

Tran also cast aspersions on agents from the FBI and Department of Labor, but it was Tran, not them, who lied and told falsehoods even as he knew he was under investigation and agents had just executed a search warrant at his house.  It is telling that Tran apparently still has not learned his lesson and accepted the truth of his crimes.  That is why the government is requesting a significant period of incarceration to demonstrate the severity of his crimes and punish him for his utter lack of self-accountability.

### B. Tran Feels Entitled To Break The Law

Tran's background and history provide no justification for his crimes.  Tran overcame significant odds to graduate from Brandeis University and attain several white-collar positions in private industry.  Tran also had a promising political future until his numerous ethical breaches as a State Senator ended his political career.  Tran is under indictment in Suffolk Superior Court for abusing his official position as a State Senator to gain unwarranted privileges arising from

using his staff for his reelection campaign.  Tran's crimes were not motivated by desperation.  The PSR describes Tran's substantial assets totaling approximately $2.2 million, and include two residences, a Fidelity 401K valued at approximately $943,000 and stocks held by his wife valued at approximately $192,000. (PSR, ¶ 100).  Nor were Tran's crimes an accident or a mistake.  Instead, they were motivated by a sense of entitlement.  Tran lied to agents and attempted to obstruct their investigation because he felt entitled to do so -- just as Tran felt entitled to use his Senate Staff to conduct campaign work for him on government time, and then lied and misled his Senate colleagues when he was called to task about it.

      Finally, deterrence is an important factor here.  It is essential for government agents to be able to conduct investigations without any obstacles to getting to the facts.  A substantial period of incarceration deters others from interfering in investigations and helps to assure that agents can do their jobs and enforce our laws.  If people are not deterred from lying and obstructing justice, our criminal justice system would be in peril.  Such a penalty also promotes respect for the law.  Specific deterrence is also important because a low-end guideline sentence for Tran's last case was apparently not enough to put him in line.  A severe penalty is called for to avoid him again using fraud schemes and interfering in investigations for his own selfish motives.

[CONTINUED ON NEXT PAGE]

## CONCLUSION

For those reasons stated above, the government requests a sentence of 18 months in prison; 3 years of supervised release; and a fine of $25,000.

        Respectfully submitted,

        LEAH B. FOLEY
        United States Attorney

By:   /s/ John T. Mulcahy
       John T. Mulcahy
       Lauren Maynard
       Assistant United States Attorneys
       617/748-3641

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

        /s/ John T. Mulcahy
        John T. Mulcahy
        Assistant United States Attorney

Date: January 28, 2026